IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


DAVID E. HILL,                          :
                                        :
            Plaintiff                   :
                                        :
      v.                                :    CIVIL NO. 3:CV-11-319
                                        :
HARLEY LAPPIN, ET AL.,                  :    (Judge Conaboy)
                                        :
            Defendants                  :

_____

**MEMORANDUM**
**Background**
_____

      David E. Hill (Plaintiff), an inmate presently confined at

the United States Penitentiary, Lewisburg, Pennsylvania (USP-

Lewisburg), initiated this pro se Bivens[1]-type civil rights action.

An Amended Complaint (Doc. 12) was subsequently filed.

      Named as Defendants therein are Director Harley Lappin and

Regional Director J.L. Norwood of the Federal Bureau of Prisons

(BOP) as well as the following USP-Lewisburg officials: Warden B.A.

Bledsoe; Lieutenants T. Johnson and C. Scampone; Correctional

Officer (CO) Kevin Gemberling; Emergency Medical Technician (EMT)

B. Walls; and Physician Assistant (PA) F. Alama.

      According to the Amended Complaint, on August 31, 2010

Plaintiff was housed in the USP-Lewisburg Special Management Unit

_____

1.  Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,
403 U.S. 388 (1971). Bivens stands for the proposition that "a
citizen suffering a compensable injury to a constitutionally
protected interest could invoke the general federal question
jurisdiction of the district court to obtain an award of monetary
damages against the responsible federal official." Butz v.
Economou, 438 U.S. 478, 504 (1978).

(SMU).  On the morning of said date, Plaintiff refused an order to be placed in handcuffs by Lieutenant Scampone and backed away from his cell door because he disagreed with a determination that he should be assigned a cellmate, Inmate John Anthony Cole.[2]

Approximately one (1) hour later, Scampone returned and again ordered Plaintiff to "cuff up."  Doc. 12, ¶ 14.  This time, Hill complied and was taken from his cell by the "force team" which was accompanying Scampone.  Id.  Plaintiff alleges that during this extraction his head and neck were twisted and his back was bent over in a compromising position.  Hill also claims that the force team placed him in overly tight ambulatory restraints which purportedly caused injury to his wrists and legs. The Plaintiff was then placed in a cell with Inmate Coles who had also been placed in restraints.

It is next asserted that two hours later Scampone and Walls returned to Hill's cell but refused the prisoner's request to loosen the restraints.  Several hours later, Defendant Johnson purportedly denied a similar request by Plaintiff to have his restraints loosened.  The Amended Complaint asserts that Hill remained in restraints for a total of eleven (11) hours.  During that period, he was allegedly unable to lie down on his bunk, eat, or use the toilet.

In addition, Hill states that he was issued a meritless misconduct report by Defendant Gemberling which charged him with

---

2.  Inmate Cole similarly refused to be housed with Hill.

2

making threatening remarks towards Inmate Cole.[3]  Finally, Hill

contends that he sought but was denied adequate medical treatment

for head, neck, wrist, and waist injuries by PA Alma.  See id. at ¶

18.  Plaintiff seeks declaratory relief as well as punitive and

compensatory damages.

Defendants have responded to the Amended Complaint by filing

a motion to dismiss and for summary judgment.  See Doc. 37.

Plaintiff has opposed the motion which is ripe for consideration.

## Discussion

## Motion to Dismiss

Defendants' pending dispositive motion is supported by

evidentiary materials outside the pleadings.  Federal Rule of Civil

Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or
> 12(c), matters outside the pleading are
> presented to and not excluded by the
> court, the motion must be treated as one
> for summary judgment under Rule 56. All
> parties must be given reasonable
> opportunity to present all the material
> that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials

accompanying the Defendants' motion.  Thus, their motion will be

treated as solely seeking summary judgment.  See Latham v. United

States, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to

dismiss has been framed alternatively as a motion for summary

judgment such as in the present case, the alternative filing "is

_____

3.  The Amended Complaint contends that Warden Bledsoe created a
policy whereby inmates who refuse cellmates are issued falsified
misconduct reports.

sufficient to place the parties on notice that summary judgment might be entered.")

## Summary Judgment

Defendants assert that they are entitled to entry of summary judgment on the grounds that: (1) this Court lacks jurisdiction over BOP Director Lappin; (2) the claims against Defendants Lappin, Norwood and Bledsoe are improperly premised on a theory of respondeat superior; (3) the claims against Defendants in their official capacities are barred by the doctrine of sovereign immunity; (4) the undisputed record establishes that Plaintiff was not subjected to an excessive use of force; (5) Hill did not have a serious medical need;(6) Plaintiff was not subjected to unconstitutional conditions of confinement; and (7) they are entitled to qualified immunity.

## Standard of Review

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 248.  The court must resolve all doubts

4

as to the existence of a genuine issue of material fact in favor of the non-moving party. <u>Saldana</u>, 260 F.3d at 232; <u>see also</u> <u>Reeder v. Sybron Transition Corp.</u>, 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. <u>Versarge v. Township of Clinton</u>, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Id</u>. (internal quotations omitted); <u>see also</u> <u>Saldana</u>, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." <u>Celotex</u>, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" <u>Saldana</u>, 260 F.3d at 232 (quoting <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Lack of Jurisdiction**

Defendants' initial argument asserts that this Court lacks personal jurisdiction over Defendant Lappin, the retired Director of the BOP.  See Doc. 43, p. 5.  According to their supporting brief, Defendant Lappin was employed as the Director of the BOP in Washington, D.C. and was a resident of Maryland. The Defendants assert that BOP Director Lappin "did not have sufficient contacts with Pennsylvania for the Court to retain personal jurisdiction." Id.

As explained in Trujillo v. Williams, 465 F.3d 1210, 1217-18 (10th Cir. 2006):

> The exercise of jurisdiction over a nonresident defendant comports with due process "'so long as there exists minimum contacts between the defendant and the forum State.'"  The minimum contacts necessary for specific personal jurisdiction may be established where the "defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum."

Based upon a review of the Amended Complaint there is no assertion by Plaintiff that Director Lappin purposefully directed his activities to Pennsylvania or can otherwise be found in Pennsylvania.  There is also no suggestion that Plaintiff's claims are based upon activities that arise out of or are related to Defendant Lappin's contacts with Pennsylvania.  Accordingly, Plaintiff has failed to satisfy his burden of establishing either that the cause of action arose from the Defendant's forum related activities or that the Defendant has systematic contacts with the

forum state.  See Asanov v. Hunt, 2006 WL 1289055 *1 (M.D. Pa. May 8, 2006)(Conner, J.).

In light of the failure of the Amended Complaint to set forth any allegations which could establish that retired Director Lappin is subject to personal jurisdiction in Pennsylvania, entry of summary judgment is appropriate.  See Greer v. Safeway, No. 09-4007, 2009 WL 754769 (10th Cir. March 24, 2009) (affirming sua sponte dismissal of in forma pauperis action where it was clear that defendants were not subject to personal jurisdiction in Utah).

Moreover, even assuming that this Court does have personal jurisdiction over former Director Lappin on the basis that he had continuous and systematic and contacts with Pennsylvania, for the reasons set forth below it is apparent that the Defendant lacked personal involvement in the alleged constitutional misconduct.

**Respondeat Superior**

Defendants' second argument maintains that there are no allegations that Defendants Lappin, Norwood, and Bledsoe had any personal involvement in the alleged constitutional misconduct and any attempt by Plaintiff to establish liability against those officials solely based upon their supervisory capacities must fail. See Doc. 43, p. 7.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the

United States.  <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638

(3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-

42 (3d Cir. 1990).

 Civil rights claims brought cannot be premised on a theory

of <u>respondeat superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207

(3d Cir. 1988).  Rather, each named defendant must be shown, via

the complaint's allegations, to have been personally involved in

the events or occurrences which underlie a claim.  <u>See</u> <u>Rizzo v.</u>

<u>Goode</u>, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>,

546 F.2d 1077 (3d Cir. 1976).  As explained in <u>Rode</u>:

> A defendant in a civil rights action must have
> personal involvement in the alleged wrongs. . .
> .  [P]ersonal involvement can be shown through
> allegations of personal direction or of actual
> knowledge and acquiescence.  Allegations of
> participation or actual knowledge and
> acquiescence, however, must be made with
> appropriate particularity.

<u>Rode</u>, 845 F.2d at 1207.

 Retired Director Lappin and Regional Director Norwood are

clearly employed in supervisory capacities by the BOP.  There is no

allegation that either of those officials had direct involvement

with respect to any of the alleged constitutional violations which

occurred at USP-Lewisburg.  It is specifically noted that there is

no contention that either of those officials in any way authorized

or acquiesced in the August 31, 2010 cell extraction and use of

ambulatory restraints which is the foundation for this action.

There are no facts alleged which could support a claim that they

acquiesced in Warden Bledsoe allege initiation of a policy

8

requiring that prisoners who refuse cellmates are to be issued misconduct charges.  Based upon the standards announced in <u>Rode</u>, Director Lappin and Regional Director Norwood are entitled to entry of summary judgment since it is apparent Plaintiff is attempting to establish liability against those officials solely on the basis of their respective supervisory capacities.

With respect to Warden Bledsoe it is undisputed that he is employed in a supervisory capacity at USP-Lewisburg.  According to the undisputed record, at the time of the alleged events of August 31, 2010, Bledsoe was attending training in San Diego, California and there is no allegation in the Amended Complaint that he authorized or acquiesced in the August 31, 2010 decision to use a force team to extract Hill from his cell and thereafter place the inmate in ambulatory restraints.  Likewise, there is no contention that the Warden had any involvement in the subsequent decision as to the prisoner's need, if any, for medical treatment.

Hence the only basis for liability against Bledsoe is Plaintiff's bald assertion that Bledsoe "has created a policy where he has instruct [sic] his staff to write false incident reports when inmates refuse to except [sic] cellmates."  Doc. 12, ¶ 17.

Based upon an application of the standards set forth in <u>Rode</u>, Bledsoe is entitled to entry of dismissal on the basis non-personal involvement with exception of the claim that he implemented an unconstitutional policy requiring the issuance of meritless misconduct charges to USP-Lewisburg inmates who refused to accept cellmates.

9

It is also possible that Plaintiff may be attempting to establish liability against Lappin, Norwood, and Bledsoe due to their responses or non-response to administrative grievances or complaints.  Prisoners have no constitutionally protected right to a grievance procedure.  See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).  Pursuant to those decisions, any attempt by Plaintiff to establish liability against Lappin, Norwood and Bledsoe based upon their handling of his administrative grievances or complaints does not support a constitutional claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional

rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Accordingly, summary judgment will be entered in favor of Defendants Lappin, Norwood, and Bledsoe on the grounds of lack of personal involvement with exception of the of the sole claim that Warden Bledsoe implemented an unconstitutional policy requiring the issuance of meritless misconduct charges to USP-Lewisburg inmates who refused to accept cellmates

## Eleventh Amendment

Defendants' next argument contends that Plaintiff's action to the extent that it raises claims for monetary damages against them in their official capacities is barred by the Eleventh Amendment. See Doc. 43, p. 10.

The United States is generally immune from suit absent an explicit waiver of sovereign immunity, United States v. Mitchell, 445 U.S. 535, 538 (1980). This "immunity is jurisdictional in nature," FDIC v. Meyer, 510 U.S. 471, 475 (1994), and extends to government agencies and employees sued in their official capacities. Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996); Chinchello v. Fenton, 805 F. 2d 126, 130, n. 4 (3d Cir. 1986).

"Congress has not waived sovereign immunity for damages claims for constitutional violations." Germosen v. Reno, Civil No. 99-1268, slip op. at 13 (M.D. Pa. Sept. 20, 2000)(Vanaskie, C.J.). Therefore, entry of summary judgment in favor of the Defendants is appropriate to the extent that the Amended Complaint asserts Bivens claims against them in their official capacities.

11

**Excessive Force**

_____With respect to Plaintiff's assertions of being subjected to excessive force by the force team, Defendants contend that based upon the undisputed record "no reasonable person would conclude defendants' conduct amounted to a violation of Hill's constitutional rights."  Doc. 43, p. 15.  In addition they claim entitlement to qualified immunity.

_____Defendants explain the undisputed facts show that "Hill was not assaulted or treated roughly in any manner."  Id., p. 13. Plaintiff counters that because he eventually consented to be cuffed up there was no need for him to be forcefully extracted from his cell by the force team and placed in ambulatory restraints.

A correctional officer's use of force in order to constitute cruel and unusual punishment, must involve the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  Id.

In a later ruling, the United States Supreme Court recognized that the use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The core judicial inquiry is "whether force was applied in a good faith

12

effort to maintain or restore discipline or maliciously and sadistically to cause harm." <u>Fuentes v. Wagner</u>, 206 F.3d 335, 345 (3d Cir.), <u>cert. denied</u>, 531 U.S. 821(2000); <u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000)(even a <u>de minimis</u> use of force, if repugnant to the conscience of mankind, may be constitutionally significant).  As explained in <u>Fuentes</u>:

> Resolution of an Eighth Amendment claim therefore 'mandate[s] an inquiry into a prison official's state of mind.'  Two considerations define that inquiry.  We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections.  If not, our inquiry is at an end.  In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain.  'What is necessary to establish an "unnecessary and wanton infliction of pain. . ." varies according to the nature of the alleged constitutional violation.'However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind.

<u>Fuentes</u>, 206 F.3d at 344.

It is undisputed that the August 31,2010 incident was triggered when Plaintiff refused a direct order by Lieutenant Scampone to be placed in handcuffs.  The parties also concur that shortly thereafter Scampone returned to Plaintiff's cell with a force team at which time Plaintiff consented to be placed in handcuffs.  The prisoner was then taken from his cell, placed in restraints, searched and escorted to another cell.

The most relevant and compelling evidence regarding this incident is the submitted videotape footage taken of the events at

13

issue which clearly details the entire extraction of Hill from his cell as well as the subsequent search and escort carried out by the force team.  Based on this Court's thorough review of the undisputed videotape evidence, there was simply no altercation on the day in question. On the contrary, the video evidence confirms that Plaintiff consented to be placed in handcuffs and did not resist being placed in ambulatory restraints.  There is also no evidence that any correctional officer did anything more then that firmly hold the prisoner.  Hill was not struck in any fashion or unnecessarily shoved or pushed.  Plaintiff did not verbalize any complaints of being injured and does not appear to be in pain.

It is apparent to this Court that based upon an application of the factors announced in <u>Brooks</u> and <u>Whitley</u> to the undisputed facts, the actions taken by Defendants and the members of the force team were not an intentional sadistic attempt to inflict harm on Plaintiff but rather a good faith effort to diffuse what began as a dangerous situation.  <u>See</u> <u>Wilson v. Horn</u>, 971 F. Supp. 943, 948 (E.D. Pa. 1997)(a plaintiff must establish that the force was applied maliciously and sadistically, instead of in good faith). Moreover, while Plaintiff may have at the most experienced some temporary discomfort there has been no evidence presented which could establish that the force which was exercised was excessive. <u>See</u> <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir.), <u>cert. denied</u>, 414 U.S. 1033 (1973) ("[n]ot every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights.") . On the contrary, it

14

appeared that Plaintiff was only firmly held and immobilized by the force team.  There is no indication that Hill was slapped, kicked, punched or struck in any manner.

While the Plaintiff may have been forcefully held immobilized and firmly escorted, no reasonable jury could find the wanton and unnecessary infliction of pain required to establish an Eighth Amendment violation with respect to the August 31, 2010 incident.  The request for entry of summary judgment with respect to the assertions of excessive force will be granted.[4]

**Medical Treatment**

Plaintiff alleges that the escort and placement of ambulatory restraints caused injury to his back, neck, wrists and waist.  See Doc. 12, ¶ 18.  He adds that when he submitted a request slip to the Medical Department the following day, PA Alama responded that "I don't have time to pull you out."  Doc. 12, ¶ 18.

Defendants counter that they are entitled to summary judgment because Plaintiff displayed no sign of injury following the extraction and was examined by a member of the prison's Medical Department both after initially being placed in restraints and when he reported to the Medical Department the following day. Accordingly, they conclude that those allegations do not establish

---

4.  The United States Supreme Court has stated that "when opposing parties tell two different stories one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

an Eighth Amendment violation and they are entitled to qualified
immunity.

The Eighth Amendment "requires prison officials to provide
basic medical treatment to those whom it has incarcerated." Rouse
v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v.
Gamble, 429 U.S. 97 (1976)).  In order to establish an Eighth
Amendment medical claim, an inmate must allege acts or omissions by
prison officials sufficiently harmful to evidence deliberate
indifference to a serious medical need.  See Spruill v. Gillis, 372
F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional
Facility, 318 F.3d 575, 582 (3d Cir. 2003).  In the context of
medical care, the relevant inquiry is whether the defendant was:
(1) deliberately indifferent (the subjective component) to (2) the
plaintiff's serious medical needs (the objective component).
Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d
Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a
physician as requiring treatment or one that is so obvious that a
lay person would easily recognize the necessity for a doctor's
attention."  Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26,
2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst.
Inmates, 834 F.2d at 347.  "[I]f unnecessary and wanton infliction
of pain results as a consequence of denial or delay in the
provision of adequate medical care, the medical need is of the
serious nature contemplated by the Eighth Amendment." Young v.

16

Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth
Cty. Corr. Inst. Inmates, 834 F.2d at 347).

It is apparent that the cuts and bruises allegedly suffered
by Plaintiff as a result of the August 31, 2010 incident were not
of such magnitude as to satisfy the serious medical need
requirement.  See Wesson v. Igelsby, 910 F. 2d 278, 284 (5th Cir.
1990)(swollen wrists not a serious medical need); Price v. Engert,
589 F. Supp.2d 240, 246 (W.D.N.Y. 2008)(wrist and hand injuries do
not satisfy the serious medical need requirement).

With respect to the subjective deliberate indifference
component, the Supreme Court has established that the proper
analysis for deliberate indifference is whether a prison official
"acted or failed to act despite his knowledge of a substantial risk
of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A
complaint that a physician or a medical department "has been
negligent in diagnosing or treating a medical condition does not
state a valid claim of medical mistreatment under the Eighth
Amendment [as] medical malpractice does not become a constitutional
violation merely because the victim is a prisoner." Estelle, 429
U.S. at 106.

When a prisoner has actually been provided with medical
treatment, one cannot always conclude that, if such treatment was
inadequate, it was no more than mere negligence.  See Durmer v.
O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).   It is true, however,
that if inadequate treatment results simply from an error in
medical judgment, there is no constitutional violation.  See id.

17

However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

Based upon a review of the videotape, it cannot be disputed that after being placed in restraints, Plaintiff was examined by a member of the prison's medical staff who determined that the prisoner had adequate circulation.  While Hill remained in restraints he was periodically checked.  See Doc. 40-1, p. 4. Plaintiff also underwent a medical assessment during that period that revealed he had no compromise to his circulation and  "no medical complaints."  See id. at p. 8.

The following day Plaintiff seen by PA DeLeon for complaints of neck and back pain.  The PA noted that Plaintiff was able to get down from the top bunk and ambulate and lean his head towards the cell door without difficulty.  See Doc. 42-1, Attachment E.  PA DeLeon also observed that Hill did not have any open wounds or swelling.  See id.

Accordingly, the undisputed record establishes that Plaintiff was evaluated by the prison's medical staff on both August 31, 2010 and September 1, 2010 and it was determined that he did not required any medical treatment.  Hence, this is not a situation where Plaintiff was not provided with medical attention. There is also no allegation by Hill that he was subsequently

18

diagnosed by any medical professional with having any need for treatment stemming from the events of August 31, 2010.

Pursuant to the standards developed in Estelle and Durmer, it is clear that Hill's assertions at best sound in negligence, not deliberate indifference. See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986)(medical negligence does not expose a defendant to liability under § 1983). Simply put, "[a]llegations of negligent treatment are medical malpractice claims, and do not trigger constitutional protections." Whooten v. Bussanich, No. 07-1441, slip op. at 4 (3d Cir. Sept. 12, 2007)(citation omitted). Thus, entry of summary judgment in favor of Defendants with respect to the claims that there was deliberate indifference to Plaintiff's medical needs is appropriate.

**Conditions of Confinement**

Plaintiff also contends that his placement in ambulatory restraints for several hours constituted an unconstitutional condition of confinement. It is undisputed that after being removed from his cell Plaintiff was placed in ambulatory restraints. He was then placed in a cell with Inmate Cole. As previously noted both prisoners objected to their being housed together. Hill and Cole both remained in ambulatory restraints for approximately eight (8) hours. See Doc. 40-1, Attachment B, p. 2.

Defendants assert that while held in restraints, Hill's well being was regularly monitored. Specifically, his restraints were checked, and there was monitoring of his food consumption, use of toilet, and overall health. See Doc. 43. Accordingly, Defendants

conclude that during the several hours that he was in restraints, the Plaintiff was not subject to unconstitutional conditions of confinement.  They further claim entitlement to qualified immunity.

As previously mentioned, the United States Supreme Court, in Farmer described the standard for determining deliberate indifference as follows:

> [A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S at 837. Thus, to succeed on such a claim, the prisoner must show: (1) that he was incarcerated under conditions posing a substantial risk of serious harm; (2) that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3) that the defendant actually drew this inference; and (4) that the defendant deliberately disregarded the apparent risk. Id.

The United States Supreme Court in Sandin v. Conner, 515 U.S. 472, 480-84 (1995), the Supreme Court reasoned that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence.  Id. at 485.  The Third Circuit Court of Appeals applying Sandin has found no merit in a procedural due process claim presented regarding disciplinary custody placement.  See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in

segregation as a disciplinary sanction did not implicate a protected liberty interest).

In Fuentes v. Wagner, 206 F.3d 335 (3d Cir. 2000) the Third Circuit Court of Appeals addressed a claim involving the placement of a prisoner in a restraint chair for eight (8) hours following a disturbance.  The Court found that those circumstances did not constitute cruel and unusual punishment.  A subsequent ruling, Camp v. Brennan, 54 Fed. Appx. 78, 81 (3d Cir. 2002) similarly concluded that the restrain of a prisoner on a table for two days while shackled and clothed only in a blanket did not constitute an Eighth Amendment violation.

Following those decisions, the United States Supreme Court handed down its decision in Hope v. Pelzer, 536 U.S. 730, 737-38 (2002) wherein it recognized that handcuffing an inmate to a hitching post for seven hours in a standing position, with his shirt off, subject to sunburn and scorching heat, without water or bathroom breaks while subject to taunting by correctional officers presented an Eighth Amendment violation.

In the present case Hill was not confined to either a chair, hitching post, or a table.  He was also not subject to the extreme conditions presented in Hope.  Rather, the submitted videotape undisputably clearly shows that Hill while in restraints had the ability to sit, stand, and walk about his cell.

Moreover, based upon undisputed institutional records submitted by the Defendants, Hill's placement in restraints only lasted approximately eight (8) hours, those records further show

that he was subject to regular monitoring during that period.  He
was not naked and there is no claim that he was denied meals (it
appears that lunch on the day in question may have been the only
meal implicated).

Qualified immunity is an affirmative defense which must be
pleaded by the defendant official.  Verney v. Pennsylvania Turnpike
Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In Harlow v.
Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court
held "that government officials performing discretionary functions
generally are shielded from liability for civil damages insofar as
their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known."  Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99
(3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D.
Pa. 1997).  It has also been held that "qualified immunity is
coextensive for suits brought against state officials under 42
U.S.C. § 1983 (1982), and for suits brought directly under the
Constitution against federal officials."  People of Three Mile
Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9
(3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S.
194 (2001), subsequently established a two part test for analyzing
qualified immunity claims.  See also Curley v. Klem, 298 F.3d 271
(3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002).
The initial inquiry in a qualified immunity examination is whether
"the facts taken in the light most favorable to the plaintiff show

a constitutional violation." Bennett, 274 F.3d at 136.  The second prong requires a determination as to whether the constitutional right at issue was clearly established.  If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201.  A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

Assuming  that Hill satisfied the first prong of Saucier, Defendants are nonetheless entitled to qualified immunity under the second prong of Saucier, which requires that "a right is clearly established if it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." Jones v. City of Jersey City, 2002 WL 1877036 *1 (3d Cir. 2002).  Courts considering a request for qualified immunity must ask if a reasonable officer would have understood that his actions were prohibited. Bennett, 274 F.3d at 136.  Under the standards developed in Jones and Bennett, it must be shown that the officer knew the constitutional right existed, ignored the right, and deliberately acted in violation of that right.

There are relatively few post-Hope cases dealing with placement in ambulatory restraints. See Womack v. Smith, 2011 WL 819558 * 13 (M.D. Pa. March 2, 2011).  Many of those cases such as Womack dealt with far more aggravated circumstances where prisoners were kept in restraints for a prolonged period of time.

However, other post-<u>Hope</u> decisions have indicated that a short term placement in ambulatory restraints approximate to the pending factual circumstances does not rise to a constitutional violation.  <u>See</u> <u>Holley v. Johnson</u>, 2010 WL 2640328 (W.D. Va. June 30, 2010); <u>Barker v. Goodrich</u>, 2010 WL 55719 *5 (S.D. Ohio Jan. 4, 2010).  Based upon those holdings, as well as the prior pre-Hope decisions of <u>Fuentes</u> and <u>Camp</u> this is simply not a case where "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 201.

While the placement of Hill in ambulatory restraints could be viewed as unconstitutional conditions of confinement, there is no factual support for a finding that the correctional officers knew or that a reasonable officer would have realized the challenged conduct was unlawful as contemplated under <u>Saucier</u>. This is simply not a case where the allegations asserted could support a conclusion that a reasonable officer would have realized that his actions were constitutionally prohibited.  Defendants' request for qualified immunity will be granted.

**False Misconduct Charge**

An alleged false misconduct charge does not by itself qualify as a violation of the Eighth Amendment.  <u>See</u> <u>Booth v. Pensce</u>, 354 F. Supp.2d 553, 558-59 (E.D. Pa. 2005).[5]  Rather, due

_____

5.  Since Hill enjoyed no constitutional right to a single cell, this is not a case where the charge was issued in retaliation for the exercise of a constitutional right); <u>Flanagan v. Shively</u>, 783
(continued...)

24

process is satisfied when an inmate is afforded to be heard and to defend against an allegedly falsified or baseless misconduct charge.  <u>See</u> <u>Smith v. Mensinger</u>, 293 F.3d 641, 653-54 (3d Cir. 2002.

Accordingly Plaintiff's claims that Warden Bledsoe and CO Gemberling violated his constitutional rights by having him issued a disciplinary charge which alleged that he made threatening remarks cannot proceed.

**Conclusion**

Any <u>Bivens</u> claims for monetary damages against the defendants in their official capacities is precluded by sovereign immunity.  Second, the Amended Complaint fails to establish that personal jurisdiction exists with respect to Defendant Lappin.

Entry of summary judgment in favor of Defendants Lappin and Norwood on the basis of lack of personal involvement is appropriate.  Based upon the undisputed facts, especially the submmitted videotape evidence, Defendants request for summary judgment with respect to Plaintiff's claims of excessive force, denial of medical care, and issuance of a meritless misconduct charge will be granted.  Finally, defendants ' request for qualified immunity will be granted with respect to Plaintiff's

---

5.  (...continued)
F. Supp. 922, 931 (M.D. Pa. 1992) (McClure, J.) (same); <u>Wilson v. Maben</u>, 676 F. Supp. 581, 584 (M.D. Pa. 1987) (Nealon, J.) ("When an inmate charged with misconduct has been afforded . . . procedural due process . . ., an allegation that he was falsely accused does not state a claim for a violation of his constitutional rights . . . .").

claim of being subjected to unconstitutional conditions of
confinement.  An appropriate Order will enter.


                                    S/Richard P.Conaboy_____
                                    RICHARD P. CONABOY
                                    United States District Judge


DATED: MARCH 15, 2012